*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUMMIT DIAMOND BRIDGE LENDERS, LLC,

        Plaintiff/Counterdefendant-
        Appellant,

v

PHILIP R. SEAVER TITLE COMPANY, INC.,
doing business as PRS ASSETS, INC.,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellee,

and

DIAMOND HEROES OF SOUTHEAST
MICHIGAN, INC., and CITYWIDE LENDING,
INC., doing business as CITYWIDE LENDING
GROUP INTERNATIONAL,

        Third-Party Defendants.[1]

UNPUBLISHED
September 24, 2019

No. 342920
Oakland Circuit Court
LC No. 2014-143557-CK

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right from the trial court's opinion and order denying plaintiff's motion for summary disposition under MCR 2.116(C)(10), and granting summary disposition to defendant, which served as plaintiff's escrow agent, under MCR 2.116(I)(2), its order denying

---

[1] Defendant's third-party claims against Diamond Heroes of Southeast Michigan, Inc. (Diamond Heroes) were dismissed with prejudice, and a default judgment was entered on defendant's third-party claim against Citywide Lending, Inc. (Citywide). Also, defendant's counterclaim against plaintiff was dismissed with prejudice. Therefore, only plaintiff's claims against defendant are relevant to this appeal.

-1-

plaintiff's motion for reconsideration, and its final order dismissing its claims against defendant. We affirm.

## I. BACKGROUND

In a prior appeal in this matter, this Court provided the following relevant, preliminary background facts:

> In 2010, Diamond Heroes of Southeastern Michigan, LLC sought funding to construct a park in Waterford, Michigan. Citywide Lending Group International, a California based entity, offered to provide Diamond Heroes a $12 million construction loan, but required Diamond Heroes to pay $676,000 as a "Collateral Commitment Deposit."[2] In June 2010, plaintiff was formed to provide a "bridge loan" to Diamond Heroes to pay the required collateral. In exchange, plaintiff sought security in the form of a "Stand-By Letter of Credit."
>
> In order to effectuate the transaction, plaintiff, Diamond Heroes, Citywide, and defendant entered into an escrow agreement in which defendant was the escrow agent. According to plaintiff, the escrow agreement provided that plaintiff's funds were not to be disbursed until defendant received the "Stand-By Letter of Credit," and that each party was to indemnify the others for any claims or damages arising out of or in connection with an instrument used in the transaction. The agreement also provided that "[a]ny dispute arising from or related to this Agreement, shall be governed by, and subject to, the laws of the State of California and shall be handled by the appropriate state or federal court located in California." [*Summit Diamond Bridge Lenders, LLC v Philip R. Seaver Title Co, Inc*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2016 (Docket No. 326679), pp 1-2 (footnote added; footnote omitted).]

The Escrow Agreement was executed on June 25, 2010. With respect to defendant's duties as plaintiff's escrow agent, the Escrow Agreement provided that defendant's "only duty, liability, and responsibility [was] to receive, hold and deliver the Escrow Funds, and verify the same" as provided by the Agreement, and that defendant "shall have no duties except those which are expressly set forth" within the Agreement. The Escrow Agreement further provided that all notices be sent to (1) Stuart Anderson, vice president of Citywide; (2) Robert Hilliard, president and chief executive officer (CEO) of Diamond Heroes;[3] (3) Carol Ann Arvan, president of Summit (plaintiff); and, (4) Tina Easley, representative of Philip R. Seaver Title Company, Inc. (defendant). Each of those four representatives signed the Escrow Agreement on behalf of their respective entities. A "sample" Stand-By Letter of Credit (SBLC) was attached as an exhibit to the Escrow Agreement.

---

[2] The amount was later raised to $700,000.

[3] Hilliard also served as co-managing member and secretary of plaintiff.

On August 11, 2010, Anderson and Frank Ulbright—the representative of Accelerated Commercial Consultants (ACC), the party to deliver the SBLC to defendant to hold in escrow—informed the parties that the Royal Bank of Scotland (RBS) in Moscow, Russia, would be issuing the SBLC. On August 14, 2010, Anderson provided a "draft" SBLC indicating that the RBS would issue the SBLC. Arvan approved this "draft" SBLC after making minor corrections.

On August 16, 2010, the parties agreed to amend certain provisions in the Escrow Agreement regarding the establishment of the escrow and the procedures for the disbursement of the escrow funds. The Amendment to the Escrow Agreement provided that "[a]n electronic or facsimile copy of the issued SBLC" would be delivered to defendant and plaintiff by ACC, and that the original SBLC would be delivered to defendant to be held in escrow. Plaintiff was required to validate the SBLC and formally reject it "only if it is materially different in scope and use as identified by this Agreement." The Amendment further provided that *both* plaintiff and defendant "shall immediately review the original SBLC when it is delivered to [defendant] to determine it matches the previously validated electronic or facsimile copy of the SBLC." If it did not match, then the SBLC would be rejected and returned to the RBS for cancellation. However, if the original SBLC was not rejected, the Amendment provided that defendant could then disburse the escrow funds.

On August 16, 2010, ACC sent defendant what ACC claimed was "the original SBLC from [the] RBS." However, upon reviewing the SBLC on August 17, 2010, Easley expressed concern whether the SBLC sent by ACC was, in fact, the original SBLC. Easley informed Arvan, Hilliard, Timothy Birtsas (a representative of Diamond Heroes), Tim Patterson (the attorney for Diamond Heroes), Anderson, and Ulbright that both Easley and Philip Seaver (Seaver)[4] "were unable to determine if the [SBLC] is an original." Arvan and Easley discussed the matter on August 17, 2010, and according to Arvan's affidavit, they could not verify the SBLC's authenticity.

Nonetheless, after Easley's discussion with Arvan, Easley sent an e-mail to Arvan, Hilliard, Birtsas, Anderson, Ulbright, and Seaver stating that defendant "will not disburse any funds from the escrow account without authorization from all parties to the Escrow Agreement." In the same email, Easley provided a written authorization document for all of the parties' representatives to sign—including Hilliard for Diamond Heroes, Arvan for plaintiff, Anderson for Citywide, and Ulbright for ACC—that would allow defendant to disburse the escrow funds. This written authorization stated that, by signing the authorization, the parties authorized "the acceptance of the [SBLC] that was submitted to [defendant] on August 17, 2010," authorized the disbursement of the escrow funds, and agreed not to hold defendant responsible for the SBLC's authenticity.

A short time after Easley requested written authorization from the parties to disburse the escrow funds, Arvan sent an e-mail to Anderson, Ulbright, Hilliard, Birtsas, and Easley. Arvan's e-mail imposed additional requirements on defendant to further verify the SBLC. Arvan

---

[4] We will refer to "Seaver" in his individual capacity, while his title company will continue to be referred to as "defendant."

expressed her unease about the purported original SBLC that defendant received from ACC. Arvan pointed out that Anderson had informed her that Stroy Investments, an "account party" for plaintiff and an investor in the baseball park project, possessed the original SBLC, which contradicted ACC's claim that it sent the original SBLC to defendant, as well as the terms of the Escrow Agreement requiring defendant—the escrow agent—to be in possession of the original SBLC. Arvan, however, did not specifically reject the SBLC, nor did she address Easley's request for written authorization to disburse the escrow funds. Rather, Arvan's August 17, 2010 e-mail, imposing additional requirements on defendant, was "an effort to verify the SBLC delivered today to [defendant] is the one and only original, valid for presentation and draw should a default occur." Arvan left the country for a personal trip, and was unavailable until August 19, 2010.

Meanwhile, Patterson informed Hilliard on August 17, 2010, that Seaver also expressed significant concern regarding the procedures used by Anderson and Citywide in issuing the SBLC and in verifying its authenticity. However, Hilliard independently confirmed the SBLC's authenticity with Anderson.[5] Hilliard then informed Patterson, Easley, and Seaver that Hilliard and Birtsas were confident that the SBLC was valid and authentic, and that Hilliard wanted to move forward with disbursement of the escrow funds. Hilliard also sought out the approval of George Shaieb, one of the four co-managing members of plaintiff's LLC. Shaieb acknowledged Arvan's unavailability, and stated that he was in favor of finalizing the SBLC transaction. Hilliard notified Easley, Arvan, and Othman Kadry (the fourth comanaging member of plaintiff's LLC) of Shaieb's approval of the SBLC. However, neither Arvan nor Kadry responded.

On August 19, 2010, without Arvan having responded to either Easley's request for written authorization to disburse the escrow funds or Hilliard's and Shaieb's approval of the SBLC's authenticity, Hilliard provided defendant with a signed copy of the written authorization allowing defendant to disburse the escrow funds. Birtsas signed for Diamond Heroes, Hilliard signed for plaintiff, Anderson signed for Citywide, and Ulbright signed for ACC. Notably, Hilliard's name was crossed out as the representative for Diamond Heroes, and was replaced by Birtsas, who signed as Diamond Heroes' authorized signatory. Arvan's name was crossed out as the representative for plaintiff, and was replaced by Hilliard, who signed as plaintiff's "secretary/co-managing member and authorized signatory." Under this signed, written authorization, defendant disbursed the escrow funds on the morning of August 19, 2010, and notified Arvan, Hilliard, Ulbright, Anderson, and Patterson by e-mail of the disbursement. The SBLC was later determined to be a forgery, and plaintiff was unable to collect the $700,000 after Citywide defaulted.

---

[5] Hilliard apparently learned—and informed Patterson, Easley, and Seaver—that ACC erred in describing the SBLC that ACC sent to defendant as "an original" because it was actually a "first-generation hard copy" of the SBLC that was sent to ACC. Hilliard also indicated that Stroy Investment, the entity that received the "original" SBLC, was an investor for plaintiff. In fact, Stroy Investment was listed as the "applicant" on the SBLC issued by the RBS.

On October 17, 2014, plaintiff filed this lawsuit, alleging that defendant breached its fiduciary duties as plaintiff's escrow agent by disbursing the escrow funds without first receiving the original, authenticated, and verified SBLC.[6] After this Court's decision in *Summit*, unpub op at 3-8, rendering the parties' forum-selection clause unenforceable, plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that defendant failed to comply with the explicit requirements of the Escrow Agreement, and that defendant breached both its express and implied fiduciary duties as plaintiff's escrow agent by disbursing the escrow funds without the original, authenticated, and verified SBLC. Defendant responded by moving for summary disposition under MCR 2.116(I)(2), arguing that defendant owed no fiduciary duties, express or implied, under the explicit terms of the Escrow Agreement, that defendant complied with the Escrow Agreement in disbursing the escrow funds, and that plaintiff's breach-of-contract claim was barred by California's four-year statute of limitations. Plaintiff replied, arguing that Hilliard did not have the authority to sign the written authorization on behalf of plaintiff, and that defendant admitted that it did not possess the original SBLC as required by the Escrow Agreement.

The trial court denied plaintiff's motion for summary disposition, and granted summary disposition to defendant. The trial court held that, under California law[7], defendant owed no duties to plaintiff other than the ones expressly set forth in the Escrow Agreement, because the parties agreed to limit defendant's duties to those expressly stated in the Escrow Agreement. The trial court also ruled that plaintiff's claim against defendant sounded exclusively as a breach-of-contract claim, not a breach of fiduciary duty claim. Further, the trial court held that defendant was contractually protected in relying on Hilliard's authority as secretary and co-managing member of plaintiff when he executed the written authorization. As an alternative basis for granting summary disposition to defendant, the trial court held that plaintiff's claim was time-barred under California's four-year statute of limitations for breach of contract claims. Plaintiff filed a motion for reconsideration, arguing that the trial court failed to properly interpret the Escrow Agreement in accordance with California law, and also erred in applying California's four-year statute of limitations instead of Michigan's six-year statute of limitations. The trial court denied plaintiff's motion for reconsideration, holding that it merely presented the same issues already ruled on by the trial court. Plaintiff now appeals, challenging the trial court's denial of plaintiff's motion for summary disposition, its grant of summary disposition to defendant, and its denial of plaintiff's motion for reconsideration.

## II. BREACH OF THE ESCROW AGREEMENT

---

[6] Plaintiff later added a breach-of-contract claim against defendant arising out of the Escrow Agreement.

[7] The trial court acknowledged the Escrow Agreement's choice-of-law clause stating that any disputes arising out of the Escrow Agreement would be governed by California law. We note that this Court's earlier opinion in *Summit*, unpub op at 3-7, only discussed—and subsequently rendered unenforceable—the Escrow Agreement's forum-selection clause, not the choice-of-law clause. Thus, California law is the governing law applicable to this case.

Plaintiff argues that the trial court erred in denying plaintiff's motion for summary disposition and granting summary disposition to defendant because defendant breached its contractual obligations under the Escrow Agreement. Plaintiff also argues that the trial court failed to properly apply California law in interpreting defendant's obligations and duties under the Escrow Agreement. Finally, plaintiff argues that defendant did not act in good faith in relying on Hilliard's signed, written authorization allowing defendant to disburse the escrow funds. We disagree.

"[A]n issue must be raised, addressed, and decided in the trial court to be preserved for review." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015).

This Court reviews a trial court's grant or denial of a summary disposition motion de novo. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008). Under MCR 2.116(C)(10), a motion for summary disposition should be granted "if the evidence submitted by the parties fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to judgment as a matter of law." *Id*. at 424-425 (quotation marks and citation omitted). A genuine issue of material fact exists when, after viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on an issue. *Id*. at 425. "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Sherry v East Suburban Football League*, 292 Mich App 23, 34; 807 NW2d 859 (2011) (citation omitted). Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo on appeal. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

Plaintiff argued before the trial court that, under California law, defendant breached its fiduciary duties owed to plaintiff, as well as its contractual obligations under the Escrow Agreement. However, plaintiff did not argue to the trial court that defendant failed to act in good faith by relying on Hilliard's signed, written authorization allowing defendant to disburse the escrow funds. While it did argue, in its brief, that Hilliard had no authority to sign an authorization, plaintiff did not specifically argue that defendant had no good faith reliance on Hilliard's signature. Therefore, plaintiff's good-faith argument is unpreserved. This Court reviews unpreserved arguments for plain error affecting a party's substantial rights. *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The third requirement generally necessitates a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

A. NATURE OF PLAINTIFF'S CLAIMS

As an initial matter, plaintiff argues that defendant, as plaintiff's escrow agent, was required to strictly comply with its obligations and fiduciary duties—both explicit and implicit— under the Escrow Agreement. The trial court held that plaintiff's breach of fiduciary duty claim

sounded as a breach-of-contract claim exclusively. Under California law, "[a]n act such as breach of fiduciary duty may be both a breach of contract and a tort." *Kangarlou v Progressive Title Co, Inc*, 128 Cal App 4th 1174, 1178; 27 Cal Rptr 3d 754 (2005). In determining whether an action lies in contract or tort, the *Kangarlou* Court stated, in relevant part:

> Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. If unclear the action will be considered based on contract rather than tort. In the final analysis we look to the pleading to determine the nature of plaintiff's claim. [*Id*. at 1178-1179 (quotation marks and citations omitted).]

Further, an escrow holder has a fiduciary duty to the escrow parties to strictly comply with the parties' instructions. *Id*. at 1179, citing *Summit Fin Holdings, Ltd v Continental Lawyers Title Co*, 27 Cal 4th 705, 711; 117 Cal Rptr 2d 541 (2002). If the escrow agent "disburses the property of his principals in violation of his instructions or otherwise breaches that duty, he is liable to the injured parties for breach of contract." *Kirk Corp v First American Title Co*, 220 Cal App 3d 785, 806; 270 Cal Rptr 24 (1990).

Plaintiff's claims sound, as conceded by it, exclusively in contract. Plaintiff alleges that defendant breached its fiduciary duties by failing to comply with its obligations under the terms of the Escrow Agreement in disbursing the escrow funds. *Kirk*, 220 Cal App 3d at 807 ("Upon the escrow holder's breach of an instruction that it has contracted to perform or of an implied promise arising out of the agreement with either party, *the injured party acquires a cause of action for breach of contract*.") (emphasis added); *Kangarlou*, 128 Cal App 4th at 1178-1179.

Plaintiff previously argued that defendant owed plaintiff implied fiduciary duties under the Escrow Agreement. "An escrow holder has an implied obligation to do all of the things normally done by an escrow agent *which were not expressly excluded by the escrow instructions*." *Kirk*, 220 Cal App 3d at 807 (emphasis added). The parties in this matter, however, explicitly provided in their Escrow Agreement that defendant "shall have no duties except those which are expressly set forth herein." This provision excepts defendant from any implied fiduciary duties under the Escrow Agreement. Accordingly, the trial court did not err in dismissing plaintiff's claim that defendant breached its fiduciary duties, express or implied, as plaintiff's escrow agent.

## B. BREACH OF CONTRACT–ESCROW AGREEMENT

Next, plaintiff argues that the trial court erred in granting summary disposition to defendant because the evidence demonstrates that defendant failed to abide by the express terms of the Escrow Agreement. To that end, plaintiff also argues that the trial court failed to properly interpret defendant's obligations under the Escrow Agreement in accordance with California law. We disagree.

Under California law, "[e]scrow instructions are interpreted under the rules applicable to contracts." *Claussen v First American Title Guaranty Co*, 186 Cal App 3d 429, 437; 230 Cal Rptr 749 (1986). California's approach to contract interpretation is as follows:

The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties . . . . Such intent is to be inferred, if possible, solely from the written provisions of the contract. The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation. [*RealPro, Inc v Smith Residential Co, LLC*, 203 Cal App 4th 1215, 1221; 138 Cal Rptr 3d 255 (2012) (quotation marks and citations omitted).]

"[Courts] must view the language of a contract as a whole, avoiding a piecemeal, strict construction approach." *Jones v Jacobson*, 195 Cal App 4th 1, 18; 125 Cal Rptr 3d 522 (2011). "If possible, [courts] should give effect to every provision and avoid rendering any part of an agreement surplusage." *Id*.

Moreover, "an escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with the depositors' instructions." *Summit*, 27 Cal 4th at 711 (citation omitted). "[E]scrow instructions may be oral, even when some are in writing and some escrow instructions may be implicit in the express instructions given." *Kirk*, 220 Cal App 3d at 807 (citation omitted). "In the event of a conflict or apparent error in instructions, the escrow holder is obliged to take corrective steps before obeying questionable instructions." *Id*.

Defendant complied with the obligations of the Escrow Agreement in disbursing the escrow funds. Neither Arvan, nor any of plaintiff's other representatives, explicitly rejected the purported original SBLC received by defendant on August 17, 2010. Arvan discussed the SBLC's questionable authenticity with Easley, but never specifically rejected the SBLC. According to Arvan's affidavit, Arvan and Easley discussed "what steps were needed to validate the SBLC." Arvan further stated, in her August 17, 2010 e-mail, that "[i]n an effort to verify the SBLC delivered today to [defendant] is the one and only original," additional steps were required. While there is an implication that Arvan did not approve the SBLC, there is no affirmative statement that verification by *her* of the SBLC as the original was required in order to accept the SBLC. The implications by Arvan are obviously at least complicated by, if not erased by, Hilliard's signing the written authorization allowing disbursement of the escrow funds. According to the express terms of the Escrow Agreement, and absent *plaintiff's* rejection of the SBLC, defendant was permitted to disburse the escrow funds. *RealPro*, 203 Cal App 4th at 1221 (explaining that California courts interpret contract provisions in accordance with their "clear and explicit meaning") (quotation marks and citation omitted).

While plaintiff characterizes Arvan's August 17, 2010 e-mail imposing additional requirements to verify the SBLC as a conflicting instruction in the face of Hilliard's and Shaieb's independent verification of the SBLC, the fact that defendant sought plaintiff's signed, written authorization before disbursing the escrow funds demonstrates defendant's due diligence in clarifying any conflicting escrow instructions. See *Kirk*, 220 Cal App 3d at 807 ("In the event of a conflict or apparent error in instructions, the escrow holder is obliged to take corrective steps before obeying questionable instructions.").

Plaintiff relies on *Diaz v United California Bank*, 71 Cal App 3d 161; 139 Cal Rptr 314 (1977), in arguing that defendant "did not have a right to ignore the instructions of [Arvan] and was under a duty to at least hold up" in disbursing the escrow funds until instructions were clarified. In *Diaz*, the escrow agent closed the escrow despite receiving a notice from one of the parties that there was a mistake in the amount to be disbursed. *Id*. at 165. The *Diaz* Court held that, "the failure of [the escrow agent] to heed the notice of a possible error in the escrow instructions and to blindly close in the face thereof might be found to be a failure to exercise reasonable skill and ordinary diligence in the conduct of the escrow," and that the escrow agent was required to "at least hold up closure until the situation was clarified." *Id*. at 167-168, 171. However, the situation in *Diaz* is distinguishable from the facts presented here because defendant affirmatively requested written authorization from plaintiff to disburse the escrow funds in the face of conflicting instructions from plaintiff's representatives. Thus, defendant's due diligence renders plaintiff's reliance on *Diaz* meritless.

Further, plaintiff argues that defendant failed to comply with Arvan's August 17, 2010 e-mail imposing additional requirements on defendant to verify the purported original SBLC's authenticity, and thus, breached plaintiff's escrow instructions. Specifically, plaintiff contends that defendant "breached by ignoring [plaintiff's] instructions that the SBLC was not validated," and that "the rejected status of the SBLC could only be overcome by strict compliance with all the conditions set forth in [Arvan's August 17, 2010 e-mail]." However, Arvan's August 17, 2010 e-mail is devoid of any mention that she, or any of plaintiff's other representatives, affirmatively "rejected" the SBLC. Further, defendant was not obligated to comply with Arvan's instructions from her August 17, 2010 e-mail because it constituted a unilateral change in the escrow instructions. See *Diaz*, 71 Cal App 3d at 170-171 ("It is also elemental that, where the written escrow instructions amount to an agreement made by two principals with their joint agent and signed by both, neither can unilaterally change the instructions."). Ultimately, defendant properly disbursed the escrow funds in accordance with the Escrow Agreement and without any objection from plaintiff or any of its representatives.

## C. GOOD FAITH

Plaintiff also argues that Hilliard lacked the authority to sign the written authorization on behalf of plaintiff, that defendant knew Hilliard lacked that authority, and that defendant had no good-faith basis to rely on Hilliard's signed, written authorization allowing defendant to release the escrow funds. Plaintiff has abandoned this argument on appeal for failing to provide any legal authority supporting its position. We reiterate that plaintiff's good-faith argument is also unpreserved for appellate review.

"An appellant may not merely announce its position and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Const Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). Plaintiff's brief on appeal fails to cite any legal authority addressing defendant's duty to act in good faith under the Escrow Agreement, or what the duty of good faith entails. In fact, plaintiff first alleged that defendant breached the implied covenant of good faith and fair dealing in its motion for reconsideration. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

Therefore, not only is plaintiff's argument that defendant did not act in good faith unpreserved, but plaintiff has abandoned this argument on appeal for failing to support its position with any legal authority. *Id*.; *Greater Bethesda Healing Springs Ministry*, 282 Mich App at 413.

Even if not abandoned, defendant acted in good faith by relying on Hilliard's signed, written authorization to disburse the escrow funds.

It has long been recognized, of course, that every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Storek & Storek, Inc v Citicorp Real Estate, Inc*, 100 Cal App 4th 44, 55; 122 Cal Rptr 2d 267 (2002).

However, "an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract." *Id*. Moreover, "[a] lack of good faith . . . suggests a moral quality, such as dishonesty, deceit, or unfaithfulness to duty." *Id*. at 59.

The Escrow Agreement provided, in relevant part, that defendant:

shall be protected in acting upon any written notice, request, waiver, consent, receipt or other paper or document furnished to it, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained, which [defendant] in good faith believes to be genuine and what it purports to be.

Further, the parties to the Escrow Agreement, by signing the written authorization allowing defendant to release the escrow funds, accepted the SBLC's authenticity, and agreed not to hold defendant "responsible and/or liable for the authenticity and or review of said document." Hilliard served as co-managing member, secretary, and authorized signatory of plaintiff, and formed plaintiff's LLC for the sole purpose of providing a bridge loan to Diamond Heroes, where Hilliard served as president and CEO. Indeed, Hilliard exhibited his authority, as a representative of plaintiff, throughout the process by obtaining and verifying the SBLC.

Plaintiff relies on the following facts in support of its argument that defendant lacked a good-faith basis to rely on the signed, written authorization: (1) Hilliard crossed out Arvan's name and signed the written authorization as a representative of plaintiff instead of Diamond Heroes; (2) defendant knew that only Hilliard and Shaieb, two of the four co-managing members of plaintiff's LLC, approved of the disbursement; and, (3) defendant "had no basis to accept [Hilliard's] authority without any confirmation." However, these facts are unavailing given that there is no supporting document or evidence to suggest that Arvan had the exclusive authority to bind plaintiff, nor is there any evidence that defendant acted dishonestly, deceitfully, or unfaithfully in seeking the written authorization. *Storek*, 100 Cal App 4th at 55, 59. Instead, the facts demonstrate that defendant had a good-faith basis to rely on Hilliard's authority—as co-managing member, secretary, and authorized signatory of plaintiff—to sign the written authorization permitting defendant to disburse the escrow funds. Therefore, the trial court did not err in granting summary disposition to defendant.

## III. STATUTE OF LIMITATIONS

Plaintiff argues that the trial court erred in holding that California's four-year statute of limitations barred plaintiff's breach-of-contract claim because Michigan's six-year statute of limitations governs plaintiff's claim. Because the trial court properly granted summary disposition to defendant on the merits of plaintiff's breach-of-contract claim, we need not address this claim.

## IV. MOTION FOR RECONSIDERATION

Plaintiff argues that the trial court abused its discretion in denying plaintiff's motion for reconsideration because (1) defendant breached its obligations and duties under the Escrow Agreement by releasing the escrow funds, (2) the trial court failed to correctly apply California law to plaintiff's breach-of-contract claim, and (3) the trial court exhibited bias. We disagree.

This Court reviews "a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs when the decision of the trial court results in an outcome falling outside the principled range of outcomes." *Id*. at 625 (quotation marks, citation, and brackets omitted).

MCR 2.119(F) provides, in relevant part:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

MCR 2.119(F) provides that trial courts have "considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Al-Maliki v LaGrant*, 286 Mich App 483, 486; 781 NW2d 853 (2009) (quotation marks and citation omitted).

Plaintiff argued in its motion for reconsideration that the trial court failed to properly interpret the Escrow Agreement in accordance with California law, and that defendant breached its contractual obligations and fiduciary duties under the Escrow Agreement by disbursing the escrow funds without first receiving the original SBLC validated by plaintiff. Plaintiff's motion for reconsideration merely presented the same issues that the trial court already ruled on when in granting summary disposition to defendant. MCR 2.119(F).

With respect to its third claim of error, that the court displayed judicial bias, to preserve an issue of judicial bias, a party must raise the claim before the trial court. *Illes v Jones Transfer Co (On Remand)*, 213 Mich App 44, 56 n 2; 539 NW2d 382 (1995). Plaintiff failed to argue to the trial court that it exhibited bias against plaintiff. Therefore, this is issue is unpreserved. Unpreserved claims of error are reviewed for plain error affecting a party's substantial rights. *Hogg*, 307 Mich App at 406. "To avoid forfeiture under the plain error rule, three requirements

must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern*, 240 Mich App at 336. The third requirement generally necessitates a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Utrera*, 281 Mich App at 8-9.

Plaintiff argues that the trial court exhibited bias by making "disparaging comments" that plaintiff's statute of limitations argument was "disingenuous."[8] Not only has plaintiff abandoned this argument on appeal by failing to provide any legal authority addressing when a trial court exhibits judicial bias, see *Greater Bethesda Healing Springs Ministry*, 282 Mich App at 413, but the trial court's characterization of plaintiff's statute of limitations argument as "disingenuous" does not rise to the level of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Kern v Kern-Koskela*, 320 Mich App 212, 231-232; 905 NW2d 453 (2017) (quotation marks and citation omitted). "[A] trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *Id*. at 232 (quotation marks and citation omitted). Accordingly, plaintiff's argument that the trial court exhibited bias is without merit. The trial court did not abuse its discretion in denying plaintiff's motion for reconsideration.

V. CONCLUSION

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[8]Plaintiff also argued that the trial court exhibited bias in dismissing plaintiff's argument that Michigan's six-year statute of limitations applied to plaintiff's breach-of-contract claim. Because analysis of the statute of limitations claim was unnecessary, so too is this argument.